# CHANDLER ADJUSTABLE CHAIR & DESK CO. v. TOWN OF WINDHAM.

(Circuit Court, D. Connecticut. October 11, 1899.)

PATENTS—INFRINGEMENT—ADJUSTABLE SUPPORTS FOR SCHOOL FURNITURE.

The Roulstone patent, No. 508,557, for adjustable supports for school furniture, in view of the prior state of the art, is a very narrow one; the essential features of the claims being confined to mere details of construction.

This was a suit in equity by the Chandler Adjustable Chair & Desk Company against the town of Windham for infringement of a patent. On final hearing.

Richard P. Elliott and Edward S. Beach, for complainant.
Perkins & Perkins and Frederick L. Emery, for defendant.

TOWNSEND, District Judge. Final hearing on bill and answer raising the questions of validity and infringement of complainant's patent, No. 508,557, granted November 14, 1893, to Thomas R. Roulstone for adjustable supports for school furniture. Complainant originally brought a suit under this patent and a Feely patent, hereafter referred to, against the makers of the infringing device. Some testimony was taken, but the suit was not pressed, and this suit was brought, and thereafter it was agreed that the former suit should await the determination of this suit. The defendant herein is a mere purchaser and user, and the action is defended by the successors of the corporation which sold these desks to the defendant, which successors are located in the First circuit, and still make these infringing chairs. No sufficient reason is shown why the complainant has asked for an injunction and accounting against this purchaser, who, so far as appears, has no intention of committing further infringement, instead of against the real defendant.

The patent relates to adjustable supports for desks and chairs, and has for its object to regulate and adjust the height of school furniture according to the size of the pupil for whom it is to be used. The three claims, all of which are alleged to be infringed, are as follows:

"(1) An adjustable support for school furniture, consisting of a base portion, C, having vertical guides, C', and a notch, C'', at its upper end, a shank, B, having a vertical slot, b, guide ribs, B', and vertical lips or ledges, B², a clamping bolt, D, detachably fitting within the notched upper end of the base portion, and extending through the vertical slot in the shank, a washer, E, bearing against the vertical lips or ledges of the shank, and a nut, d, engaging the bolt and bearing against the washer, substantially as described. (2) An adjustable support for school furniture, consisting of a base portion, C, having vertically tapering guides, C', and a notch, C'', at its upper end, a shank, B, having a vertical slot, b, and tapering guide ribs, B', fitting the tapering guides of the base portion, a clamping bolt, D, engaging the notched upper end of the base portion and extending through the vertical slot in the shank, a washer, E, bearing against the shank, and a nut, d, engaging the bolt and bearing against the washer, substantially as described. (3) An adjustable support for school furniture, consisting of a base portion, C, having vertical tapering guides, C', a shank, B, having a vertical slot and tapering guide ribs, B', fitting the tapering guides of the base portion, and a clamping bolt engaging the base portion and extending through the vertical slot in the shank, substantially as described."

The adjustable support consists of a base, and a shank with vertical ribs tapered to correspond with guide grooves in the base so as to protect the stand against downward pressure. The shank and base are held together by a screw-threaded bolt, which passes through a horizontal slot in the shank and is secured by a nut and washer. It is claimed that the patent covers the use of tapering slides so adapted to each other as to secure the benefit of a wedge action. The complainant contends that this is a pioneer patent, which has solved the problem of adjustable school furniture. The evidence,

however, shows that the patent is a step backward; that the complainant itself has abandoned the construction described therein, and has ceased paying the agreed royalties to the Roulstone representatives; that it is no longer making school furniture under the Roulstone patent, but is making it under the Feely patent; and that the Roulstone patent is so defective that, to use the language of the treasurer of the complainant company concerning the Roulstone standards in his affidavit in support of the application for the Feely patent:

"I consider them efficient for their intended purpose, when applied singly to chairs; but when they are applied in pairs to desks they are open to the objection that the screws whereby they are secured to the desk and floor are soon wrenched loose, owing to the fact that the faces on the upper and lower portions of the standards. on which the said portions slide, are slanted, and hence separate slightly when the desk is raised, and have to be drawn together again laterally in order to clamp the desk in its adjusted position. The defect just stated has been known to me and to the company generally ever since the Roulstone standards were put upon the market, by reason of numerous complaints from the purchasers thereof; but, although the company would at all times have been glad to discover a practical means of obviating the said defect, yet no one in its employ, so far as I am aware, has ever been able to propose any way of doing so."

Prior patents showed every element of the patented combination in this art. The patent to Thompson granted December 3, 1872 (No. 133,551), shows every element of the first claim, except the notch, which the defendant does not use. The only material difference between this claim and the second and third claims is in the addition of a wedge device which is shown in the Fisher and Alliger patents. This construction is used by the defendant. All that the complainant did was to shift the wedge of the Fisher patent so that there should be double-wedged surfaces bearing against each other, instead of a single-wedged surface as shown therein, without securing any new function or result. The complainant is therefore in this dilemma, on either horn of which he must be impaled: Either the change of location of the two slanting wedges from Fisher or Alliger does not involve invention, for the foregoing reason, or, if it does involve invention, then it does not embrace the Alliger and Fisher construction used by the defendant. Furthermore the file wrappers of the Roulstone and Feely patents show that the patent in any case is a very narrow one; that the claims are very limited, and that the patentee, as a condition of securing said claims, admitted that the essential features thereof were mere details of construction. Defendant further shows that the first claim is limited to a notch, which it does not use. For the purpose of supporting the patent, complainant's counsel have insisted upon a protection against lateral motion by reason of certain transverse wedging afforded by the action of the bolt and washer upon the sides of the slotted shank. This characteristic of the patent is not referred to in the specification or claims, except as it may be inferred from the use of the word "spanning." That it was not thought of or claimed in the patent in suit is evident from the fact that it is specifically claimed in the fourth claim of the Feely patent taken out by complainant as assignee, and from the statement of its counsel in the Feely application that the

Roulstone patent does not cover this transverse-wedging construc tion. In view of the necessarily limited construction to be given to the patent by reason of the foregoing facts, it must be held that the defendant does not infringe any of said claims, and a decree may therefore be entered dismissing the bill.